# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01177-SCT

*HENRY W. KINNEY*

*v.*

*SOUTHERN MISSISSIPPI PLANNING AND
DEVELOPMENT DISTRICT, INC. AND
MISSISSIPPI ASSOCIATION OF PLANNING AND
DEVELOPMENT DISTRICTS*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/2015 |
| TRIAL JUDGE: | HON. SANFORD R. STECKLER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL ADELMAN |
| | DONALD RAFFERTY |
| ATTORNEYS FOR APPELLEES: | HUGH D. KEATING |
| | JE'NELL BLOCHER BLUM |
| | JAMES H. HERRING |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/18/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., COLEMAN AND MAXWELL, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. In 2013, Henry W. Kinney began reading news stories in the local and state newspapers regarding the selection of Leonard Bentz II as Southern Mississippi Planning and Development District's executive director. More specifically, the stories Kinney read related to the closed-door selection of Bentz as executive director. According to Kinney, he became

"curious as to how an agency he believed to be public could conduct its business behind closed doors and not provide the public access to its books and records."

¶2. Kinney filed several record requests under the Public Records Act regarding Bentz's selection as executive director; however, some of Kinney's requests were never fulfilled. As a result, Kinney filed a complaint seeking a declaratory judgment that Southern Mississippi Planning and Development District (District) be declared a public agency subject to the Mississippi Public Records Act, Mississippi Public Procurement laws, Open Meetings laws, Mississippi law regarding salaries/compensation of public officials, Mississippi Ethics in Government laws, Mississippi auditing requirements, Mississippi laws regarding removal of officers from public office, and other general provisions applicable to public office. Kinney also sought the selection of Bentz to be deemed invalid because it did not comply with Mississippi's laws governing public agencies.

¶3. As a result of Kinney's suit, the District, joined by the Mississippi Association of Planning and Development District, Inc. (MAPDD), who intervened in the suit, filed motions for summary judgment. The Harrison County Chancery Court, First District, granted the motions for summary judgment. Kinney appeals the chancery court's decision. Discerning no error, we affirm the chancery court's decision in the case.

## FACTS AND PROCEDURAL HISTORY

¶4. The District is one of ten planning and development districts in Mississippi, and the MAPDD is the trade organization of all of the planning and development districts. In 1997, the Mississippi Legislature's Joint Committee on Performance Evaluation and Expenditure

2

Review created a report describing planning and development districts and the oversight of the planning and development districts. The report provided that the planning and development districts "are private, nonprofit, nonshare corporations created to promote regional economic development." Further, the planning and development districts' "status as governmental service providers chartered for a public purpose warrants legislative interest in their accountability for the use of public funds." Finally, the report reiterated that the planning and development districts are private, nonprofit corporations, but "federal and state agencies review specific programs, but no state agency routinely oversees their programs or finances on a comprehensive basis."

¶5. In 1966, the District filed its articles of incorporation with the Mississippi Secretary of State's office and was formed as a nonprofit corporation. The District's membership includes members from Covington, Forrest, George, Greene, Hancock, Harrison, Jackson, Jefferson Davis, Jones, Lamar, Marion, Pearl River, Perry, Stone, and Wayne Counties. The District's Board of Directors is made up of elected officials and other individuals from the member counties, and the Board of Directors is subject to the corporate by-laws. According to the District's articles of incorporation, its purpose is to "promote civic improvement and economic development[.]" In 1971, the District underwent a name change from Southern Mississippi Economic Development District, Incorporated, to its current name by amendment to the Charter of Incorporation. Also in 1971, Governor John Bell Williams signed Executive Order 81, designating all of the planning and development districts as regional clearinghouses for federal-state programs.

¶6.     When it came time to select a new executive director of the District, the District published a job vacancy announcement for the position, and on August 7, 2013, the Board of Directors unanimously selected Bentz for the position.  Shortly thereafter, Kinney began filing requests for what he deemed were public records subject to the Mississippi Public Records Act.  The District responded to Kinney's request by letters on August 23, 2013; September 18, 2013; and November 8, 2013.  The responses indicated that the District was a nonprofit corporation not subject to the Public Records Act except in limited circumstances.  The District's response also explained that several of the requested items were either personnel records or attorney-client-privileged communications and/or work product.  However, the District did provide Kinney with some of the information he requested.

¶7.     Apparently unsatisfied with the District's responses to his requests, Kinney filed a complaint for declaratory judgment on December 4, 2013, and later amended his complaint on January 17, 2014.[1]  Kinney sought three declarations: 1. That the District "is a public agency, subject to the Mississippi Public Records Act, open meetings requirements, auditing requirements, procurement laws, and all other rules and regulations applicable to public agencies[;]" 2.  That the action of selecting Bentz as the executive director was invalid because the action was not in compliance with the open meetings laws and other laws governing public agencies; and 3. That the action of selecting Bentz was invalid because Bentz was unqualified for the position pursuant to the advertised qualifications in the job

---

[1] Kinney first filed his complaint in the Harrison County Circuit Court, but the case was transferred later to the chancery court.

announcement. Thus, according to Kinney's second and third premises, Bentz no longer could hold the executive director position. The District filed its answer and a counterclaim to Kinney's complaint on January 31, 2014.[2]

¶8. On February 27, 2014, the MAPDD filed a motion to intervene as a defendant in the case. The basis of its intervention, according to MAPDD, was the possible statewide implications for the other planning and development districts, each with their own charters and boards of directors, and for MAPDD should Kinney successfully have the District declared a public agency or body. MAPDD further explained that intervention should be permitted because, even though MAPDD and the District have similar interests, the District was "unable, with certainty, to adequately represent" the other planning and development districts due to the differing structures and purposes of the other planning and development districts. Kinney opposed MAPDD's intervention because he believed that the other nine planning and development districts should intervene based on their differing structures, purposes, and interests, and that MAPDD could not represent adequately all of the other nine planning and development districts' interests. After a hearing on MAPDD's motion to intervene, the chancery court granted MAPDD's motion on April 22, 2014.

¶9. Meanwhile, on April 14, 2014, the District filed a "Motion for Summary Judgment and Motion to Dismiss, or in the alternative, for Summary Judgment." On May 2, 2014, MAPDD also filed a "Motion for Summary Judgment and Motion to Dismiss, or in the alternative, for Summary Judgment[.]"

---

[2] The District later voluntarily dismissed the counterclaim.

5

¶10.    After some time spent attempting to conduct discovery, with only limited discovery permitted, Kinney filed a motion to have Chancery Court Judge Sandy Steckler recuse himself from the case.  According to Kinney's motion, Judge Steckler "exhibited bias with statements made during the hearing and conferences" and such statements indicated that Judge Steckler, based on his own personal experiences on similar boards of directors, already has reached a conclusion that the District is not a public body or agency.  Kinney also asserted that Judge Steckler's wife's position as the Executive Director of the Land Trust for the Mississippi Coast Plain would affect Judge Steckler's judgment.  Additionally, Mrs. Steckler's position on the Board of Directors for the Heritage Trails Partnership of the Mississippi Gulf Coast also would affect Judge Steckler's judgment.  According to Kinney, Judge Steckler's decisions in the present case would be clouded based on the possible impact that a finding in Kinney's favor would have on Mrs. Steckler's positions.  Lastly, Kinney claimed that Mrs. Steckler had exhibited personal bias against Kinney, and "one cannot help but believe [that the personal bias] has been discussed with [Judge] Steckler and represents his position as well."  Judge Steckler entered an order denying Kinney's motion to recuse. Kinney appealed Judge Steckler's denial of his motion to recuse, and the Court denied Kinney's request for the Court to review Judge Steckler's denial of the motion to recuse.

¶11.    Following a hearing on July 16, 2015, the chancery court granted the District's and MAPDD's motions for summary judgment by order on July 23, 2015.  According to the chancery court, the District had presented evidence that it was not a public agency based on the presentation of its corporate charter and other relevant documents, the fact that the

6

District is not immune under the Mississippi Tort Claims Act, and the fact that the District's employees are not entitled to government-employee health insurance or to participate in PERS. The chancery court specifically acknowledged the plethora of Mississippi ethics opinions and Attorney General opinions which conclude that the planning and development districts are not public bodies or political subdivisions and are not subject to public records requests; however, the chancery court also noted that such opinions were not binding or authority on the case. In describing Kinney's position, the chancery court pointed to Kinney's affidavit that the District is a public body because: all of the District's members are governmental; membership is closed; the District does not pay ad valorem taxes in Harrison County because the tax assessor treats the District as a unit of government; the District has no conflict-of-interest policy; the District's operating money comes from local, county, state, or federal government; the District's business "consists exclusively of performing government functions[;]" and the District was never organized as a nonprofit corporation. The chancery court summarized: "In short, . . . Kinney maintains that so long as the purpose of the [District] and the nature of the funds it hold[s] are public in nature, then [the District] is, in fact, a public agency." The chancery court also specifically noted its consideration of Kinney's concerns about the level of accountability over the District and the MAPDD for the expenditure of public funds; however, it concluded that the District's and the MAPDD's expenditures were audited by the State Auditor, and the governmental agencies/departments that grant the funds have authority to require accountability. With regard to the status of the District as a public body, the chancery court concluded that Kinney "failed to bring forward

7

significant probative evidence demonstrating the existence of the triable issue of fact."

Additionally, the chancery court found that Kinney lacked standing to bring an action challenging the District's selection of Bentz, or any of the District's actions, based on the District's status as a nonprofit corporation.

¶12.   On appeal, Kinney raises the following issues:

I.      Whether the evidence establishes that [the District] is a public body subject to certain Mississippi statutes regulating public and governmental bodies[.]

II.     Whether the [chancery] court erred in relying exclusively on Attorney General Opinions and ignored statutory language and documents which establish that [the District] is a public body subject to certain Mississippi statutes regulating public an [sic] governmental bodies[.]

III.    Whether the deposition of Lynn Cartlidge supports a finding that [the District] is a public body subject to certain Mississippi statutes regulating public an [sic] governmental bodies[.]

IV.     Whether [the District]'s status as a non[]profit corporation prohibits any consideration of said District as a public or governmental body[.]

V.      Whether the [Mississippi Supreme] Court erred in denying [Kinney's] Motion for Recusal.

VI.     Whether the [chancery] court erred by granting intervention to [MAPDD.]

**STANDARD OF REVIEW**

¶13.   The Court's standard of review for a trial court's grant of summary judgment is well-settled:

The standard of review for a trial court's grant or denial of a motion for summary judgment is de novo. The evidence is viewed in the light most favorable to the party opposing the motion. The moving party has the burden of demonstrating no genuine issue of material fact exists. Summary judgment

8

is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Hosemann v. Harris*, 163 So. 3d 263, 267 (¶9) (Miss. 2015) (internal citations omitted).

## ANALYSIS

### I.     DISTRICT'S STATUS[3]

¶14.    Kinney claims that the chancery court erred in granting the District's and MAPDD's motions for summary judgment because the evidence presented and statutes cited established that the planning and development districts, specifically the District, are public bodies subject to several Mississippi statutes governing and regulating public and governmental bodies. Kinney further claims that the chancery court erred in relying exclusively on Attorney General opinions and Ethics Commission opinions as the basis for its decision. Kinney points to the deposition of the president of the District's Board of Directors Lynn Cartlidge as support for his position that the District is a public body. Lastly, Kinney submits that, contrary to the chancery court's finding, the District can be considered a public body while still maintaining its status as a nonprofit corporation.

¶15.    Kinney begins by asserting that the chancery court's decision has no legal basis and is "contrary to Mississippi statutory law, is not supported by any case law, and is contradicted by the fact that [the District and other planning and development districts] are subject to audit by the State Auditor." We interpret Kinney's argument to be that Governor John Bell

---

[3] Due to the related nature of Kinney's first four issues, we address all four issues in one section.

9

Williams's executive order in 1970 essentially "created" the planning and development districts, even though the planning and development districts were organized, incorporated, and operational several years prior to the executive order. Thus, according to Kinney's reasoning, the language in Mississippi Code Section 25-61-3, the Public Records Act, and Mississippi Code Section 25-41-3, the Open Meetings laws, that define public bodies as entities created by the Mississippi Constitution, statute, or *executive order* means that the planning and development districts are considered public bodies and are subject to complying with the Public Records Act and Open Meetings law.

¶16. We disagree with Kinney's logic. All of the planning and development districts, including the District, were *created* when they incorporated with the Secretary of State's Office, not when Governor Williams issued the executive order. Further, we do not interpret the executive order to change the status of any of the planning and development districts or to convert them into governmental entities/public bodies. On the narrow issue of whether the District is a public body for the purposes of the Public Records Act and the Open Meetings law, we hold that the planning and development districts, specifically the District in the present case, were not created by the Mississippi Constitution, statute, or executive order, and Kinney's argument to the contrary fails. The District was created as a nonprofit corporation in 1966 and has operated continuously as such since that time. Kinney has not produced any evidence that the District's status or activities have changed. Therefore, summary judgment was appropriate.

II.    MOTION FOR RECUSAL

10

¶17.   On July 11, 2014, Kinney filed a motion to compel Judge Steckler to recuse.  In his motion, Kinney claimed that Judge Steckler had made several statements indicating that he already had made a decision about the case's merits based on his past experiences with nonprofits situated similarly to the District.  However, the bulk of Kinney's motion to recuse was based on Judge Steckler's wife and her position as the executive director of the Land Trust for Mississippi Coastal Plain and her position on the Board of Directors for the Heritage Trails Partnership of the Mississippi Gulf Coast.  Kinney claimed that Judge Steckler's ruling would be biased because Mrs. Steckler's positions and organizations might be impacted by Judge Steckler's ruling– particularly if the ruling was in Kinney's favor.  Additionally, Kinney claimed that in June 2014, Mrs. Steckler personally had opposed his selection to the Heritage Trails Partnership's Board of Directors because he was "contentious and controversial."  Kinney explained that Mrs. Steckler's views of him should be imputed to Judge Steckler as evidence of bias/impartiality.

¶18.   On July 30, 2014, the chancery court held a hearing on Kinney's motion to recuse and ultimately denied Kinney's motion.  Pursuant to Mississippi Rule of Appellate Procedure 48B, Kinney appealed the chancery court's decision to the Court, and the Court declined to review the chancery court's decision.  Kinney now incorporates Judge Steckler's denial of his motion to recuse in the present appeal.

¶19.   Uniform Chancery Court Rule 1.11 addresses a party's motion for recusal of judges.  Rule 1.11 provides that a party may move for a judge's recusal "if it appears that the judge's impartiality might be questioned by a reasonable person knowing all the circumstances, or

11

for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law." Additionally, Canon 3(E) of our Code of Judicial Conduct similarly provides that a judge should recuse "in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law[.]" Specifically, Canon 3(E)(1)(a) provides that a judge should recuse if the judge "has a personal bias or prejudice concerning a party . . . ." Canon 3(E)(1)(c) also provides that a judge should recuse if the judge or the judge's spouse or family member residing in the judge's household "has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."

¶20.    "[T]his Court *presumes* that a judge, sworn to administer impartial justice, is qualified and unbiased." ***Turner v. State***, 573 So. 2d 657, 678 (Miss.1990) (emphasis added). For a party to overcome the presumption, the party must produce evidence of a reasonable doubt about the validity of the presumption. ***Id.*** Reasonable doubt may be found when there is a question of whether "a reasonable person, knowing all of the circumstances, would harbor doubts about the [judge's] impartiality." ***Id.*** (citations omitted). Said another way, "[t]he presumption is overcome only by showing beyond a reasonable doubt that the judge was biased or unqualified." ***Hathcock v. Southern Farm Bureau Cas. Ins. Co.***, 912 So. 2d 844, 848 (¶9) (Miss. 2005) (citing ***Upton v. McKenzie***, 761 So. 2d 167, 172 (Miss. 2000)). "This Court reviews a judge's refusal to recuse himself using the manifest error standard."

12

***Bredemeier v. Jackson***, 689 So. 2d 770, 774 (Miss. 1997) (citing ***Davis v. Neshoba Cnty.***

***Gen. Hosp.***, 611 So. 2d 904, 905 (Miss. 1992)).

¶21.    Kinney urges on appeal that: "[I]t is apparent from comments by Judge Steckler that

he possessed a basic scepticism [sic] towards [Kinney's] lawsuit. Judge Steckler's references

to the fact that his wife held positions with two (2) non-profit organizations, reflect his basic

bias against . . . Kinney's lawsuit. They [(the statements)] reflect his underlying negative

attitude." We hold that Judge Steckler did not err in denying Kinney's motion to recuse.

¶22.    Kinney makes only broad assertions, without citation to the transcript, that Judge

Steckler's comments at a hearing and a status conference indicated that he would be reluctant

to rule in Kinney's favor and had formed an opinion on the merits prior to the merits being

before the chancery court. Kinney does not cite specific comments that Judge Steckler made

that would support his contentions. Notwithstanding Kinney's failure to cite any portion of

the transcript in his brief, after reviewing Kinney's motion for recusal and the transcript, we

conclude that Kinney mischaracterizes Judge Steckler's comments. Several times throughout

the hearings, Judge Steckler attempted to summarize his understanding of the issues and the

law before the chancery court at the time. For example, at the June 11, 2014, status

conference, Judge Steckler stated:

> I may have an overly simplistic view of this and somebody probably needs to
> get me on track here. And I don't mind normally telling lawyers what I'm
> thinking so that . . . if I'm missing something, somebody can fill me in and
> make sure I get on track. And if I'm right, then there is no sense in going into
> extraneous areas.
>
> But I would think that if an organization is a public body, it probably has to be
> established by statute, but maybe not. It would seem to me like it either is or

13

it isn't. I don't think I get to– as a judge, I don't think I get to determine that an agency is a body politic or a public agency. . . .

Later in the same hearing, Judge Steckler stated that he was familiar with a number of nonprofits that get most or all of their money from the government and are subject to audit. When questioned by Kinney to name one, Judge Steckler responded that the organization with which his wife was involved–Land Trust for the Mississippi Coast Plain– fell into that category, and also, he was on the board for a boys' youth camp nonprofit organization, both groups being mainly government funded. While Judge Steckler may have made statements expressing uncertainty with the success of Kinney's suit and the basic facts of the case, Judge Steckler expressed that he was open to correction; therefore, Judge Steckler's statements, taken in context of the transcript as a whole, are not sufficient to warrant his recusal.

¶23. With regard to Kinney's claim that Judge Steckler should recuse based on Mrs. Steckler's involvement with other nonprofits, we again conclude that Judge Steckler did not err in denying Kinney's motion to recuse. Judge Steckler and his wife do not have a financial interest in the District or MAPDD, and neither is an individual party; therefore, the only consideration is whether they have "any other interest that could be substantially affected by the outcome of the proceeding." In *Washington Mutual Finance Group, LLC v. Blackmon*, 925 So. 2d 780, 795 (¶60) (Miss. 2004), the Court held:

> The broadly accepted rule is that in order for Canon 3 (E)(1)(c) or (d), to require recusal, the judge must either own an interest in a party litigant or, if he does not, there must be a showing– not mere speculation– that he will be substantially affected by the decision of the case.

14

Judge Steckler explained that Mrs. Steckler's position at other nonprofits lacks any connection to the present case and that Kinney never gave "any theory on how or why the chancellor's wife would be affected" if Judge Steckler ruled in Kinney's favor.

¶24. Therefore, we hold that the chancery court did not err in denying Kinney's motion for Judge Steckler to recuse.

### III. MAPDD INTERVENTION

¶25. Finally, Kinney claims that the chancery court erred in granting MAPDD's motion to intervene. In *Madison HMA, Inc. v. St. Dominic-Jackson Memorial Hospital*, 35 So. 3d 1209, 1214-5 (¶¶14-17) (Miss. 2010), the Court clarified the standard of review regarding permissive intervention and intervention of right. First, permissive intervention receives an abuse-of-discretion review because the trial court "may permissively grant or deny a motion to intervene, provided there is a common question of law or fact and the motion was timely filed." *Id.* at 1215 (¶16). However, intervention of right receives a de novo review because the Court is reviewing a question of law. *Id.* at (¶17). In the present case, the chancery court granted MAPDD's motion to intervene as a matter of right; therefore, de novo review is appropriate.

¶26. Mississippi Rule of Civil Procedure 24(a) provides that a party may be permitted to intervene as of right when a statute confers an unconditional right to intervene or

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

15

Kinney claims on appeal that MAPDD did not have a legally protectable interest in Kinney's suit and, even if it had an interest, MAPDD failed to show that the interest could not be represented adequately by the District. According to Kinney, his suit was "not directed at any aspect of MAPDD as an entity unto itself, and MAPDD "cannot show that its interest is such that MAPDD itself 'will either gain or lose by the direct legal operation and effect of the judgment.'" (quoting *Defenders of Wildlife v. Jackson*, 284 F.R.D. 1, 6 (D.D.C. 2012)). Simply, even if the chancery court ruled in Kinney's favor, he claims that "MAPDD would still be in a position in which it could continue to support both the [District] as well as the additional nine (9) planning and development districts represented by MAPDD." Additionally, Kinney claims that MAPDD did not have an interest that was not adequately protected and represented by the District because there was no argument that a diversity of interests, collusion, or nonfeasance existed. *See Bush v. Viterna*, 740 F. 2d 350, 355 (5th Cir. 1984). In fact, Kinney claims that MAPDD failed to take *any* position contrary to or different from the District.

¶27. The party seeking intervention, particularly where intervention of right is claimed, should receive the benefit of the doubt. *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 385 (Miss. 1987) (citation omitted). The Court has outlined a four-prong test to analyze a party's intervention of right:

> (1) he must make timely application, (2) he must have an interest in the subject matter of the action, (3) he must be so situated that disposition of the action may as a practical matter impair or impede his ability to protect his interest, and (4) his interest must not already be adequately represented by existing parties.

*Id.* at 381. In addressing an intervening party's interest in the subject matter of litigation, the Court in **Pittman**, 501 So. 2d at 384 (internal citation omitted), held:

> The wording of Rule 24, in our view, calls for an interpretation based in common sense and practicality. Legalistic formalism and mechanical jurisprudence simply do not fit the language or philosophy of the rule. All that is necessary is that GNIC establish an interest in the rights that are at issue in the litigation. GNIC has written a liability policy by virtue of which it may be called upon to pay Pittman's damages. . . . [W]hether the Pittman judgment against Hardin stood made quite a difference to GNIC. This gave GNIC an interest in the transaction which is the subject matter of the pending action adequate to the requirements of Rule 24(a)(2).

However, as the Court stated in **Perry County v. Ferguson**, 618 So. 2d 1270, 1272 (Miss. 1993), "more than a mere economic interest" must be shown. In **Pittman**, the Court addressed whether GNIC would be at a disadvantage in protecting its interest if it was not allowed to intervene. **Pittman**, 501 So. 2d at 384. The Court explained that "[t]he rule is satisfied whenever disposition of the present action would put the would be intervenor at a practical disadvantage in protecting his interest." *Id.* at 384. Lastly, the Court addressed whether GNIC's interest could be protected adequately by another party's representation. The Court recognized that GNIC and Hardin had similar interests; however, the attorney representing Hardin, though paid for by GNIC, had "an absolute and uncompromisable ethical duty" to protect the party she represented, even if such representation harmed GNIC. *Id.* at 385. Ultimately, the Court concluded that GNIC should have been permitted to intervene in the suit. *Id.* at 386.

¶28. In the present case, MAPDD claims its interest is based on its status as the "trade organization" of all the planning and development districts in Mississippi, and a disposition

17

in Kinney's favor would impair or impede MAPDD's ability to protect the other planning and development districts from also being declared public bodies. According to MAPDD, if the District is declared a public body and all of the other planning and development districts are then deemed public bodies, then all of the contracts, agreements, and actions taken by all of the planning and development districts since their creation are at issue, because all were based on the premise that the planning and development districts were private nonprofit corporations. Additionally, MAPDD claims that there would be significant constitutional issues involving the separation of powers based on the elected officials serving on the planning and development districts' boards of directors. MAPDD submits that, though the District is a part of MAPDD, all of the planning and development districts are unique and different from one another; therefore, MAPDD properly was permitted to intervene to protect all of the planning and development districts' interests.

¶29.    We hold that the chancery court did not err in allowing MAPDD to intervene in the present case.

<u>CONCLUSION</u>

¶30.    For the reasons discussed above, we hold that the chancery court correctly granted the District's and MAPDD's motions for summary judgment, that the chancery court did not err in denying Kinney's motion to recuse, and that the chancery court did not err in allowing MAPDD to intervene. We affirm.

¶31.    **AFFIRMED**.

     **RANDOLPH, P.J., LAMAR, MAXWELL AND BEAM, JJ., CONCUR. WALLER, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE**

18

**WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND KING, JJ.**

**WALLER, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶32. I concur with the majority's rulings on the issues of recusal and MAPDD's intervention. However, because I believe that the Southern Mississippi Planning and Development District ("the District") is a public body subject to the Public Records Act and Open Meetings Law, I respectfully dissent in part.

¶33. Planning and development districts are public bodies and must comply with the Public Records Act and Open Meetings Laws. Under Mississippi's Open Meetings Laws, a public body is defined as that "which is supported wholly or in part by public funds or expends public funds." Miss. Code Ann. § 25-41-3 (Rev. 2010). Under Mississippi's Public Records laws, a "public body" is defined as "any other entity created by . . . executive order . . . ." Miss. Code Ann. § 25-61-3 (Rev. 2010).

¶34. Additionally, Mississippi's Public Procurement Laws define "governing authority" as "any political subdivision of the state supported wholly or in part by public funds of the state of political subdivisions." Miss. Code Ann. § 31-7-1(b) (Rev. 2010). The ethics in government laws define "government" as "any . . . institution . . . created by . . . executive order including all units that expend public funds." Miss. Code Ann. § 25-4-3 (Rev. 2010).

¶35. The Legislature clearly has recognized planning and development districts as public agencies for some purposes. *See* Miss. Code Ann. 17-17-305 (Rev. 2012) (defining a "public agency" as a "planning and development district . . . ."); Miss. Code Ann. 17-17-501 (Rev. 2012) (defining "public agency" as a "planning and development district . . . .").

19

¶36. The District fits the description of a public body as defined in these statutes. Although the District was incorporated as a nonprofit corporation in 1966, five years later, Governor Williams entered Executive Order 81. This order "officially designated all of MS planning and development districts as the regional clearinghouses for federal programs and coordination of federal grants." And the Mississippi Association Planning and Development District Directory states that this order "designated the Planning and Development District as Mississippi's official *sub-state* regions."

¶37. What's more, the closed membership of the District is limited to fifteen county governments and incorporated municipalities contained within those fifteen counties, which are "wholly" supported by public funds. There are no nongovernmental members of the District. And there are no private or individual donors to the District. The District follows the Governmental Accounting Standards Board (GASB) in filing its annual tax returns and not the Financial Accounting Standard Board (FASB). Those standards are exclusively applicable by rule for accounting and financial statements for the United States government, State governments, and local governments. The District does not pay ad valorem taxes within Harrison County because the assessor treats the District as a unit of government.

¶38. The District also goes into "executive session" under Section 25-4-7 of the Mississippi Code, which governs closing of a public body's meetings to conduct public business. This statute is applicable only to public bodies. The District is subject to audit by the state auditor. After acknowledging the "continuous public character of the PDD's purposes and functions," the Attorney General's Office in *McLeod* opined that "it is our opinion that Planning and

20

Development Districts [sic] are either public entities or instrumentalities of political subdivisions of the state and, as such, are subject to audit by the State Auditor." *McLeod*, Op. Att'y Gen. No. 2003-0573(2003).

¶39.    Kinney is a taxpayer. And the District is supported with taxpayer money. As Kinney correctly argues, "the District's self-designation as a non-profit cannot be construed as a shield preventing the Court from inquiring into the nature of the funds it holds and the purposes for which is operates." Kinney–as a taxpayer of the county in which the District operates–had every right to the records of the District.

¶40.    For these reasons, I believe that the District is a public agency, subject to the Mississippi Public Records Acts, open meetings requirements, auditing requirements, procurement laws, and all other rules and regulations applicable to public agencies. Thus, I believe the circuit court erred in granting the District's and MAPDD's motions for summary judgment.

**DICKINSON, P.J., KITCHENS AND KING, JJ., JOIN THIS OPINION.**