# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00246-SCT

*RANKIN COUNTY BOARD OF SUPERVISORS*

*v.*

*LAKELAND INCOME PROPERTIES, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/25/2017 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | DAVID ELLIS |
| | DANNY DRAKE |
| | WILLIAM "TREY" JONES, III |
| | CRAIG SLAY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOSEPH ANTHONY SCLAFANI |
| | WILLIAM "TREY" JONES, III |
| | TAYLOR B. McNEEL |
| | CRAIG SLAY |
| ATTORNEYS FOR APPELLEE: | DAVID ELLIS |
| | DAVID W. MOCKBEE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: REVERSED AND REMANDED - 05/10/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHAMBERLIN AND ISHEE, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     The Board of Supervisors of Rankin County has appealed the decision of the circuit court granting Lakeland Income Properties' summary judgment motion and holding that Lakeland Income Properties was properly before the circuit court and was entitled to an ad

valorem tax exemption under Mississippi Code Section 61-3-21 for the land rented from the Jackson Municipal Airport Authority. The circuit court also granted a refund of the 2015 ad valorem taxes. Lakeland Income Properties filed a cross-appeal, arguing that it was entitled to an ad valorem tax refund under Mississippi Code Section 27-73-7 for the 2015 ad valorem taxes and for the prior three years. Under a de novo standard of review, the Court affirms the trial court in holding that the ad valorem tax exemption sought by Lakeland Income Properties was automatic and self-operating under Mississippi Code Section 61-3-21, and thereby, properly before the circuit court under Mississippi Code Section 11-51-77. Further, the Court affirms the trial court's holding that Lakeland Income Properties was entitled to a refund of the 2015 taxes. The Court reverses the trial court's holding that Lakeland Income Properties is not entitled to a refund for the 2012, 2013 and 2014 tax years, holding that Lakeland Income Properties is entitled to the refund under Mississippi Code Section 27-73-7.

**FACTS AND PROCEDURAL HISTORY**

¶2. Lakeland Income Properties, LLC (LIP) filed a Notice of Appeal on November 23, 2015, alleging that LIP was aggrieved by the November 16, 2015, decision of the Board of Supervisors (the Board) assessing ad valorem taxes to LIP for the property it leases from the Jackson Municipal Airport Authority (the Airport).[1] LIP cited Mississippi Code Section 61-3-21 as proof that it was entitled to an exemption from ad valorem taxes. The property is a

[1]On August 27, 2014, LIP sent the Board a Mississippi Tort Claims Act Notice of Claim letter. The letter stated that it was providing notice of the Board's incorrect assessment of ad valorem taxes on LIP's property that is rented from the Airport. The Board responded to the letter via e-mail, stating that the property was properly assessed. LIP originally filed a complaint, but the circuit court advised that a Notice of Appeal was the proper procedural vehicle. The complaint was subsequently dismissed.

2

5.20-acre parcel of land at the corner of Lakeland Drive and Airport Road that contains a shopping plaza.

¶3. Both parties filed competing motions for summary judgment. The motions for summary judgment addressed whether Section 61-3-21 required an exemption of the ad valorem taxes assessed to LIP. LIP argued that Section 61-3-21 entitled it to an exemption, and a refund was required for the previous three years of taxes. The Board argued that the exemption did not apply because LIP's real property did not fall into the definition of an airport under Section 61-3-3.

¶4. After the parties filed responses and rebuttals to the summary judgment motions, the Board filed a Motion to Dismiss, arguing that the circuit court did not have jurisdiction over the appeal because LIP failed to object under Section 25-35-93 to the Board's assessment of taxes or file an application for change of the assessment. LIP responded with a Motion to Strike, stating that the Motion to Dismiss was untimely. LIP also argued that it was not required to file an objection or an application under Section 11-51-77; therefore, their appeal was properly before the circuit court.

¶5. After a hearing on the competing motions for summary judgment, the Motion to Dismiss and the Motion to Strike, the trial judge ruled from the bench and then issued a corresponding written judgment to follow. The trial court denied LIP's Motion to Strike, finding that the jurisdictional issue cannot be waived. The trial court then denied the motion to Dismiss, finding that the appeal was proper under Section 11-51-77. The Court then granted LIP's summary judgment motion and denied the Board's summary judgment motion,

3

finding that the exemption applied under Section 61-3-21, for the tax year of 2015 but not the prior years. The Board appealed, and LIP filed a cross-appeal.

## STATEMENT OF THE ISSUES

¶6. The Board raised three issues on appeal, and LIP raised two issues. The issues are consolidated and restated as follows:

> **(1) Whether the circuit court erred in denying the Board's Motion to Dismiss based upon LIP's failure to object or file an application before the Board prior to appealing to the circuit court pursuant to Mississippi Code Section 11-51-77.**
>
> **(2) Whether the circuit court erred in granting LIP's summary judgment motion, denying the Board's summary judgment motion and holding LIP exempt from ad valorem taxes under Mississippi Code Section 61-3-21.**

LIP raises one issue on its cross-appeal. The issue is restated as follows:

> **Whether the circuit court erred in holding that LIP is entitled to a refund of only its 2015 ad valorem taxes, as opposed to a refund reaching back three years.**

## STANDARD OF REVIEW

¶7. The Court reviews a motion to dismiss de novo. ***Chandler v. McKee***, 202 So. 3d 1269, 1271 (Miss. 2016). A summary judgment motion also is reviewed de novo. ***Kinney v. S. Mississippi Planning & Dev. Dist., Inc.***, 202 So. 3d 187, 192 (Miss. 2016). "The evidence is viewed in the light most favorable to the party opposing the motion. The moving party has the burden of demonstrating no genuine issue of material fact exists." ***Id.*** "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

4

material fact and that the moving party is entitled to judgment as a matter of law.'" ***Id.***

(quoting ***Hosemann v. Harris***, 163 So. 3d 263, 267 (Miss. 2015)).

## ANALYSIS OF THE APPEAL

**(1)     Whether the circuit court erred in denying the Board's Motion to Dismiss based upon LIP's failure to object or file an application before the Board prior to appealing to the circuit court pursuant to Mississippi Code Section 11-51-77.**

¶8.     The instant issue revolves around the reading of three statutes, Sections 11-51-77, 27-35-93 and 27-35-143. Section 11-51-77 states in pertinent part:

> Any person aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town or village, as to the assessment of taxes, may, within ten days after the adjournment of the meeting at which such decision is made, appeal to the circuit court of the county . . . .   The controversy shall be tried anew in the circuit court at the first term . . . .

Miss. Code Ann. § 11-51-77 (Rev. 2012).

¶9.     Section 27-35-93 states in full:

> A person who is dissatisfied with the assessment may, at the August meeting, present objections thereto in writing which shall be filed by the clerk and docketed and preserved with the roll. *All persons who fail to file objections shall be concluded by the assessment and precluded from questioning its validity* after its final approval by the board of supervisors or by operation of law, except minors and persons non compos mentis.

Miss. Code Ann. § 27-35-93 (Rev. 2017) (emphasis added).

¶10.     Section 27-35-143 states in pertinent part:

> The board of supervisors of each county shall have power, upon application of the party interested, or by the assessor on behalf of such party . . . to change, cancel or decrease an assessment in the manner herein provided at any time after the assessment roll containing such assessment has been finally approved by the State Tax Commission, and prior to the last Monday in August next, under the following circumstances and no other:

5

. . .

13. When the property has been assessed as subject to state taxes and is exempt; or when the property has been assessed as subject to county and district taxes and is exempt from such taxes.

Miss. Code Ann. § 27-35-143 (Rev. 2017).

¶11. The parties focus their arguments on the rules of statutory interpretation. The Board argues that Section 11-51-77 is a statute of general application; therefore, the more specific Sections—Section 27-35-93 and Section 27-35-143—apply over Section 11-51-77. LIP argues that Section 11-51-77 alone applies. LIP reasons that Section 27-35-93 and Section 27-35-143 do not address exemptions or apply to the instant case because the airport exemption at issue is automatic or self-operating.

¶12. The Court's role "is not to decide what a statute should provide, but to determine what it does provide." *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011). "All words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning; but technical words and phrases according to their technical meaning." Miss. Code Ann. § 1-3-65 (Rev. 2014). The Court examines the statute and linguistic choices as a whole, not looking to the words in isolation. *Miller v. French*, 530 U.S. 327, 340, 120 S. Ct. 2246, 2255, 147 L. Ed. 2d 326 (2000); *In re Settoon Towing, L.L.C.*, 859 F.3d 340, 345 (5th Cir. 2017). "If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." *Lawson*, 75 So. 3d at 1027.

¶13.    On the other hand, if a statute is "ambiguous or silent," statutory interpretation is warranted. *Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 607 (Miss. 2009).  Under the doctrine of *stare decisis*, the Court has stated, "[W]e will nevertheless continue to apply the previous [statutory] interpretation, pursuant to the doctrine of stare decisis, upon finding the Legislature amended or reenacted the statute without correcting the prior interpretation." *Caves v. Yarbrough*, 991 So. 2d 142, 153 (Miss. 2008).

**(A) Section 27-35-143**

¶14.    The Board argues that Section 27-35-143 provides that an application with the Board is required before an appeal can be taken.  As stated above, Section 27-35-143 provides that "[t]he board of supervisors . . . shall have power, upon application of the party interested . . . to change, cancel or decrease an assessment in the manner herein provided . . . ." Miss. Code Ann. § 27-35-143.  It then provides: "When the property has been assessed as subject to state [or county and district taxes] and is exempt . . . ." Miss. Code Ann. § 27-35-143 (13). The plain language of Section 27-35-143 neither provides what a taxpayer must do to preserve the right to appeal nor requires a taxpayer to file an application.  It merely details the power of the board of supervisors "upon application."  Miss. Code Ann. § 27-35-143. Therefore, the only statutes at issue that address an appeal and the procedure pre-appeal are Sections 11-51-77 and 27-35-93.

**(B) Section 27-35-93 and Section 11-51-77**

¶15.    To understand Sections 27-35-93 and 11-51-77, the Court must look to our caselaw reaching back to 1876 and the corresponding statutes, the rights to appeal an airport

7

exemption interestingly being partly determined by caselaw handed down approximately twenty-seven years before Kitty Hawk and while Orville and Wilbur Wright were mere children. In 1876, the Court stated that the board of supervisors' decision regarding an "exemption under statutory or constitutional provisions" is not final. ***Horne v. Green***, 52 Miss. 452, 457 (1876). "The action of the board of supervisors in matters of assessment is only conclusive as to mere irregularities and matters of fact resting wholly *in pais*[, outside of court]; such, for instance, as excessive valuation, misdescriptions, listing of property to the wrong person, and the like." ***Id.*** at 456-57 (emphasis in original).

¶16.    At the time of ***Horne***, Sections 1684 of the Code of 1871 contained the precursor language to Section 27-35-93. Section 1684 provided "any person dissatisfied with any assessment, may file his objections thereto, in writing, on or before the first Monday of August, which shall be filed by said clerk, and preserved with said rolls." Miss. Code § 1684 (1871). Further, Section 1685 provided that "the board of supervisors of each county, shall hold a meeting at the court house . . . to hear objections . . .[and] said rolls, after being examined and corrected as aforesaid, shall be *final and conclusive*, as to the assessments contained therein." Miss. Code §1685 (1871) (emphasis added). At the time of ***Horne***, there was no statute allowing for appeal of an assessment to the circuit court, as is provided for today in Section 11-51-77.

¶17.    Moving to the Code of 1880, Section 504 addressed appeals and constitutes the precursor statute to Section 11-51-77.[2] The Code of 1880 also continued to contain the

---

[2]It stated in pertinent part: "Any person aggrieved by any decision of the board of supervisors as to the assessment of taxes may, within five days after the adjournment of the

8

language pertinent in *Horne*. Section 1684 became Section 499,[3] and Section 1685 became Section 503.[4] The Legislature also added the following language to Section 499: "[A]ny person failing to file objections, as herein provided for, shall be concluded by said assessment, and precluded from questioning its validity, after the approval of such assessment roll by the board of supervisors." The additional language added to Section 499 serves to clarify the law already present in the code that, after the rolls are corrected for objection, they are final and conclusive. *See* Miss. Code §1685 (1871).

¶18.   Although the numbers of the relative statutes have changed since 1871 and 1880, the text of the statutes at issue has remained materially the same. Therefore, the additional language added to Section 499 does not affect the analysis of the *Horne* Court. Further, neither does the addition of Section 504 affect the analysis of the *Horne* Court.

¶19.   The Court now turns to our caselaw over the last century, and when examined closely, it follows the rule first penned in *Horne*. In 1888, the Court cited *Horne* in *City of Meridian v. Philips*, 4 So. 119 (Miss. 1888). The *Philips* Court upheld *Horne* in holding that "where property is *exempt* by law from taxation, it cannot be subjected thereto by any action of the

---

meeting at which such decision is made, appeal to the circuit court of the county . . . ." Miss. Code § 504 (1880).

[3]Section 499 stated: "any person dissatisfied with any assessment may file his objections thereto in writing, on or before the first Monday of August . . . ." Miss. Code § 499 (1880).

[4]"The board of supervisors of each county, shall hold a meeting at the court-house, on the first Monday of August to hear objections to the assessment, and to examine the same." Miss. Code § 503 (1880). Further, it stated "said rolls, after being examined and corrected as aforesaid, shall be final and conclusive, as to the assessments contained therein." *Id.*

9

board of supervisors, or the officers charged with the assessment and collection of taxes . . . ." ***Id.*** at 120 (emphasis added).

¶20. In 1932, the Court created an exception, holding that an objection is needed if the property is "not such a property as is absolutely exempt from taxation, but is subject to taxation or not, according as the facts may be." ***N. Am. Old Roman Catholic Diocese v. Havens***, 144 So. 473, 474 (Miss. 1932). The exemption statute in ***Havens*** asked the Court to consider whether the property was owned by a religious organization *and* being used exclusively for religious or charitable purposes. ***Id.*** Therefore, ***Havens*** limited the ability of a taxpayer to appeal without objection only to cases in which the exemption is automatic or self-operating.

¶21. In 1946, the Court once again examined ***Horne***. ***Stern v. Parker***, 27 So. 2d 402, 403 (Miss. 1946). The ***Stern*** Court stated:

> And for three quarters of a century, say as far back as ***Horne v. Green***, 52 Miss. 452, it has been the settled rule, under statutes of which Sections 9789 and 9790, Code 1942, are the present representatives, that the final judgment of the taxing authorities is conclusive, in the absence of objections thereto presented before the said authorities in the statutory manner and at the time and place designated by the statute, *as to all issues resting in pais, as for instance "listing the property to the wrong person and the like," which would include, of course, the assessment of an interest therein to the wrong person.*

***Stern***, 27 So. 2d at 403 (emphasis added). Notably, ***Stern*** does not address an exemption, and it reiterates that an objection is required for issues with the assessment, such as listing the wrong person. Similarly, sixteen years before ***Stern,*** the Court held that an objection in writing was required for objecting to an assessment in ***Adams County v. Bank of Commerce***

10

*in Liquidation*, 128 So. 110 (Miss. 1930). However, *Adams County* also failed to deal with exemptions.

¶22. In 1962, the Court again revisited the effect of self-operating or automatic exemptions in *Gray v. Steelman*, 137 So. 2d 797 (Miss. 1962). The Court held that a tax sale for the surface land did not include any mineral rights because "upon the creation of such mineral interest the exemption automatically applies." *Id.* at 799. *Gray* is in line with *Horne*, *Havens*, *Stern* and *Adams County*. Under *Gray*, once the interest was created, the exemption applied, meaning the exemption is automatic or self-operating. *Gray*, 137 So. 2d at 799. The exemption was not a factual question as in *Havens*, and the issue in *Gray* was whether an exemption applied, as opposed to the assessment issue in *Stern* or *Adams County*.

¶23. In 1988, the Court again weighed in on whether an objection to the assessment was needed to appeal an exemption. *Morco Indus., Inc. v. City of Long Beach*, 530 So. 2d 141 (Miss. 1988). In *Morco Industries*, the taxpayer sought a refund of ad valorem taxes collected for a school district under an exemption. The taxpayer sought a refund for the years of 1981 through 1983, but the taxpayer paid the taxes each year without objection or protest. *Id.* at 142. In August 1985, the taxpayer made an application for a refund. *Id.* at 142. Aside from the year in which the application was filed, the Court held, "[W]e are of the opinion that Morco was entitled to exemption from all taxes, ad valorem and otherwise, for a period of ten (10) years from the date of completion of the project and that the lower court erred in

11

ruling to the contrary." *Id.* at 144. Therefore, as in *Gray*, from the creation of the interest, the exemption applied.

¶24. In 2014, the Court of Appeals considered whether it could consider a tax assessment that never was objected to under Section 27-35-93. ***Darden ex rel. Darden v. Bd. of Supervisors, Wilkinson Cty.***, 169 So. 3d 913 (Miss. Ct. App. 2014). The ***Darden*** Court concluded that it could not, because the statute had not been followed. *Id.* at 915. ***Darden*** considered a tax assessment that was never objected to, but not a tax exemption; therefore, it is in line with ***Adams County***. In fact, many cases[5] that have come before the Court have noted the importance of the objection (or application or petition) before the board (or city or commission) before an appeal is taken. However, like ***Darden*** and ***Adams County***, those cases did not address a claimed exemption.

¶25. Based on precedent dating back to 1876 and the fact that the statutes at issue have not materially changed, the Court affirms the trial court's judgment. Under Section 27-35-93, a taxpayer who claims entitlement to an exemption that is automatic or self-operating need not file an objection, petition, or application with the board before appealing to the circuit court under Section 11-51-77. In essence, the doctrine of *stare decisis* carries the day. *See* ***United Servs. Auto. Ass'n v. Stewart***, 919 So. 2d 24, 30 (Miss. 2005) ("Our application of

---

[5] *See* ***Pascagoula-Gautier Sch. Dist. v. Bd. of Supervisors of Jackson Cty.***, 212 So. 3d 742, 747 (Miss. 2016); ***Riverboat Corp. of Mississippi v. Harrison Cty. Bd. of Supervisors***, 198 So. 3d 289 (Miss. 2016); ***Mississippi State Tax Comm'n v. ANR Pipeline Co.***, 806 So. 2d 1081 (Miss. 2001); ***Ditto v. Hinds Cty., Miss.***, 665 So. 2d 878 (Miss. 1995); ***Lenoir v. Madison Cty.***, 641 So. 2d 1124 (Miss. 1994); ***City of Jackson v. DeSoto, Inc.***, 350 So. 2d 686 (Miss. 1977); ***Jennings v. Bd. of Supervisors of Coahoma Cty.***, 31 So. 107 (Miss. 1902).

stare decisis is necessary, inter alia, so that trial courts can make correct decisions and lawyers can properly advise their clients."). The Court determined the Legislature's intent in 1876 regarding the precursor statute to Section 27-35-93, and within the passing 142 years, the statutory language at issue in 1876 has not materially changed. Further, the cases related to the issue before the Court—whether they be on the requirement of objections for alleged faulty assessments or on the effect of an exemption—have supported the ***Horne*** Court's analysis. This analysis allows the appeal, shall we say, to take flight.

**(2)     Whether the circuit court erred in granting LIP's summary judgment motion, denying the Board's summary judgment motion and holding LIP exempt from ad valorem taxes under Mississippi Code Section 61-3-21.**

¶26.    The instant issue turns on a de novo analysis of the following two-part consideration, as stated above. The taxpayer need not file an objection, petition, or application with the board before appealing to the circuit court under Section 11-51-77, if two conditions exist: (1) the taxpayer claims entitlement to an exemption and (2) that exemption is automatic or self-operating.

¶27.    There is no dispute here that the taxpayer claims entitlement to an exemption. The exemption at issue is Mississippi Code Section 6-3-21(3). It states:

> (3) All contracts, leases and other arrangements entered into pursuant to this section are deemed to serve a public and governmental purpose as a matter of public necessity; therefore, all such contracts, leases, and other arrangements and all structures, improvements and other facilities erected, installed, constructed or located in connection therewith on an airport or air navigation facility owned or controlled by an authority, or any portion of facility thereof or space therein, shall be free and exempt from all state, county and municipal ad valorem taxes on real property and personal property for so long as may otherwise be lawful, and the charges, rentals and fees received by an authority

13

in connection with such contracts, leases and other arrangements shall be deemed to be in lieu of said taxes.

Miss. Code Ann. § 61-3-21 (Rev. 2013). The contracts, leases and other arrangements referred to are defined by subsection one. It states:

(1) In connection with the operation of an airport or air navigation facility owned or controlled by an authority, the authority may enter into contracts, leases and other arrangements for terms not to exceed fifty (50) years with any persons: (a) granting the privilege of using or improving the airport or air navigation facility or any portion or facility thereof or space therein *for commercial purposes*; (b) conferring the privilege of supplying goods, commodities, things, services or facilities at the airport or air navigation facility; and (c) making available services to be furnished by the authority or its agents at the airport or air navigation facility.

Miss. Code Ann. § 61-3-21 (emphasis added). Further, Section 61-3-3 is material to the analysis, as it defines the term "airport" as used in Section 61-3-21. It states in pertinent part:

The following words or terms, whenever used or referred to in this chapter, shall have the following respective meanings unless different meanings clearly appear from the context:

(a) "Airport" means any area of land or water which is used, or intended for use, for the landing and taking off of aircraft, and any appurtenant areas which are used, or intended for use, for airport buildings or other airport facilities or rights-of-way, or for other appropriate purposes, *including buffer areas and areas for airport compatible development,* together with all buildings and facilities located thereon.

Miss. Code Ann. § 61-3-3 (Supp. 2017) (emphasis added).

¶28. The trial court found that the airport exemption applied to LIP's property. LIP argues that the trial court's holding was correct. Quoting the statuary language, LIP reasons that the leased property is in an area of airport-compatible development, is a buffer area to the Airport and is being used by LIP for commercial purposes. On the other hand, the Board

14

argues that LIP's lease does not qualify for the exemption because the commercial purpose is not in connection with the operation of the airport. Further, the Board argues that LIP has not met its summary judgment burden by providing evidence of the commercial purpose being in connection with operation of the airport. The Mississippi Airports Association filed an amicus brief arguing that the statutory scheme under Section 61-3-1 provides broad authority to airport authorities to lease properties for commercial development.

¶29. For tax statutes, the "presumption is in favor of taxing power, and burden is on the claimant to prove or establish clearly his right to exemption . . . ." ***Kerr-McGee Chem. Corp. v. Buelow***, 670 So. 2d 12, 16 (Miss. 1995). The Court recently has stated:

> [S]ince exemptions from taxation are not favored, [the] general rule is that a grant of exemption from taxation is never presumed; on the contrary, in all cases having doubt as to legislative intention, or as to inclusion of particular property within [the] terms of [the exemption] statute, [the] presumption is in favor of [the] taxing power, and [the] burden is on [the] claimant to prove or establish clearly his right to exemption . . . .

***Castigliola v. Miss. Dep't of Revenue***, 162 So. 3d 795, 799–800 (Miss. 2015) (quoting ***Miss. State Tax Comm'n v. Med. Devices, Inc.***, 624 So. 2d 987, 990–91 (Miss. 1993)). And, under the summary judgment standard, "[t]he evidence is viewed in the light most favorable to the party opposing the motion. The moving party has the burden of demonstrating no genuine issue of material fact exists." ***Kinney***, 202 So. 3d at 192.

¶30. The first question is whether the lease between LIP and the Airport was for commercial purposes in connection with the operation of the airport when an airport includes "buffer areas and areas for airport compatible development . . . ." Miss. Code Ann. §§ 61-3-

15

3, 61-3-21(3).[6] Second, the question is whether the exemption created by Section 61-3-21(3) is automatic.

**(A)** **Whether the lease was for commercial purposes in connection with the operation of the airport under Section 61-3-3.**

¶31. In 2012, an attorney general opinion was issued interpreting "commercial purposes" under Section 61-3-21. *Akins*, Opinion No. 2012-00024, 2012 WL 1071307 (Miss. A.G. Feb. 21, 2012). Considering the plain language and the ordinary use of the words, the attorney general opinion stated:

> The term "commercial" is defined in Blacks Law Dictionary, Fifth Edition, as "relates to or is connected with trade and traffic or commerce in general; is occupied with business and commerce." The term "commerce" means "the exchange of goods, productions, or property of any kind; the buying, selling, and exchanging of articles." Blacks Law Dictionary, Fifth Edition.

*Id.* at *4. It then concluded: "We interpret the phrase 'commercial purpose,' as contemplated in MCA Sections 61-3-21 and 61-5-11, to mean for the purpose of engaging in business or for the purpose of buying or selling goods, products or property." *Id.*

¶32. The Court agrees with the 2012 attorney general opinion. Under the ordinary meaning and use of "commercial purposes," it includes the sale or exchange of goods. *See* Miss. Code

---

[6]The Board places great weight on a 2002 attorney general opinion. In 2002, the attorney general issued an opinion on the instant issue concluding that the property was not exempt. However, the applicable statutes have since been amended. *Mitchell*, Opinion No. 2002-0164, 2002 WL 1057926, at *1 (Miss. A.G. Apr. 19, 2002). First, in 2004, the definition of airport was amended adding, "or for other appropriate purposes, including buffer areas and areas for airport compatible development . . . ." Miss. Code Ann. § 61-3-3 (2004). Second, the exemption statute, Section 61-3-21, did not contain any language regarding commercial purposes. The changes in the statute materially affect the application of the statute; therefore, the attorney general opinion is inapplicable to the instant case.

Ann. § 1-3-65 (2014) (All words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning). Further, in support of its summary judgment motion, LIP presented an affidavit stating the terms of the lease and stating that the property has been used solely for "commercial purposes" since the inception of the lease. The lease itself also was before the trial court, and it provided that the land will be utilized for "the development and operation of a shopping center and related improvements."

¶33. Therefore, considering the evidence before the trial court, it is clear that the shopping plaza fell within the general understanding of "commercial purposes," as stated by Section 61-3-21. *See* Miss. Code Ann. § 61-3-21. In fact, the lease could not have been extended to LIP if the proposed development did not serve any of the purposes detailed in Section 61-3-21(1). *See id.* Specifically, here, the lease served a commercial purpose, as detailed in Section 61-3-21(1).

¶34. The question now becomes whether the shopping mall, when leased to LIP from the Airport, constitutes "other appropriate purposes, *including* buffer areas and areas for airport compatible development." Miss. Code Ann. § 61-3-21. The use of the word "including" illustrates that other appropriate purposes can be considered *either* buffer areas *or* areas for airport-compatible development.

¶35. The plain meaning of "compatible" in the Merriam-Webster Dictionary is "capable of existing together in harmony" *Compatible*, Merriam-Webster Dictionary (2018). Black's Law Dictionary does not define "compatible." Understanding what is compatible with the Airport or exists in harmony with the Airport requires the Court to consider the specific

17

concerns and issues faced by the Airport. Miss. Code Ann. § 61-3-3. Based on the materials before the trial court[7] and in the record on appeal, it is apparent that the noise of the airport is a concern for development. According to the Airport Association's brief, "[t]he FAA has long encouraged measures by state and local governments to establish and maintain compatible land uses around airports." Land leased for a commercial purpose—such as the buying or selling goods, products, or property—serves the purpose of ensuring development, despite any noise issues. Therefore, land leased by the Airport for commercial purposes is a compatible development for an airport.[8]

¶36. Further, Black's Law Dictionary does not define "buffer area," but it defines a buffer zone as "[a]n *area* of land separating two different zones or areas to help each blend more easily with the other, such as a strip of land between industrial and residential areas." *Buffer zone*, Black's Law Dictionary (10th ed. 2014) (emphasis added). The record on appeal, including the zoning maps, shows that the property at issue falls in the area immediately adjacent to the land used for landing and taking off of aircraft. Thus, along with being an

---

[7]The lease agreement between LIP and the Airport mentions the noise inherent in the operation of aircraft. Further, the 2000 Master Plan Update for the Jackson International Airport was presented to the trial court, and it contains a section dedicated to "Noise Exposure." Noise exposure also is mentioned throughout the report at different intervals.

[8]This conclusion matches the persuasive authority on point. In 2005, under the amended statutes, the attorney general considered whether real estate owned by the Golden Triangle Regional Airport Authority and leased to a private company was exempt. *Andrews*, Opinion No. 2005-0462, 2005 WL 3298167, at *1 (Miss. A.G. Sept. 23, 2005). The attorney general answered in the affirmative stating: "the [statutory] language clearly exempts any structures, improvements and personal property erected or installed on a leasehold executed pursuant to this authority from all state, county or municipal real or personal property ad valorem taxes." *Id.*

18

airport-compatible development, the property at issue also falls within the buffer area or zone, as defined by Black's Law Dictionary.

¶37.    The Board argues that certain actions by the Board, specifically in 2008, as shown by the Board's minutes, illustrate that LIP's property is not a buffer area or an airport-compatible development because it was deemed to be surplus land.  However, the actions of the Board were specifically—as noted in the minutes on January 22, 2008—to "preserve the ad valorem tax exemption available to leases of airport properties" and to make the leases "more bankable so that it would be more economically feasible for Chamblee to continue to improve the properties."  The November 20, 2008, resolution also did not change the undisputed fact that LIP continued to rent the land at issue from the Airport. Therefore, this argument is moot.

¶38.    The record contains information that (1) the leased premises had a commercial purpose, and (2) with the noise concern, land leased for a commercial purpose is compatible with the Airport.  Thus, the instant issue does not present a disputed issue of material fact. LIP's shopping plaza constitutes an airport-compatible development as Section 61-3-21 contemplates, and it is entitled to the ad valorem tax exemption.

**(B) Whether the exemption is automatic.**

¶39.    Material to the de novo summary-judgment analysis is the final question of whether the instant exemption is automatic or self-serving.  The automatic versus factually driven exemption was first penned by the *Havens* Court. *Havens*, 144 So. at 473.  In *Havens*, the question was not only whether the property was owned by the religious organization, but also

19

whether it was being used exclusively for religious purposes. *Id.* at 474. In *Havens,* the Board needed to inquire not only into who bought the property but also into the specific everyday use of the property by the owners. *See id.* The inquiry was a fact-driven one that would change on a case-by-case basis. On the other hand, in *Gray*, the Court held that at "the creation of such mineral interest the exemption automatically applies." *Gray*, 137 So. 2d at 799.

¶40. Here, when the Airport leases land for a commercial purpose and the rents exchange hands, the exemption applies. In other words, at the time of the lease, the purpose of the property is known because the Airport cannot enter into a lease like the one at issue unless it has a commercial purpose.[9] Section 61-3-21 states in pertinent part: "[T]he authority may enter into . . . leases . . . (a) granting the privilege of using or improving the airport or air navigation facility or any portion or facility thereof or space therein for commercial purposes . . . ." Miss. Code Ann. § 61-3-21. And the payment of rents is the exemption that applies in lieu of taxes, as in *Gray*, where "[t]he mineral documentary stamp tax [was] a substitute for the ad valorem taxes . . . ." *Gray*, 137 So. 2d at 799.

¶41. The Court holds that the instant case is on point with *Gray* and distinguishable from *Havens*. The trial court was presented with enough evidence to determine, as the trial court did, that the exemption was automatic and did not require an objection. Thus, because the trial court was presented with evidence of the commercial purpose of the lease and because the creation of the lease for a commercial purpose automatically triggers the exemption, the

_____

[9]Section 61-3-21 lists other possible purposes. *See* Miss. Code Ann. § 61-3-21(1). However, for the instant case, commercial is the only purpose at issue.

20

Court affirms the trial court's grant of LIP's motion for summary judgment and denial of the Board's motion for summary judgment.

## ANALYSIS OF THE CROSS-APPEAL

**Whether the circuit court erred in holding that LIP is entitled only to a refund of its 2015 ad valorem taxes, as opposed to a refund reaching back three years.**

¶42. When it granted LIP's summary judgment motion, the trial court found that LIP was entitled to a refund of its 2015 taxes, but the tax refund did not reach back to the three years prior to November 2015 because the additional years were not properly before the court on appeal under Section 11-51-77. On appeal, LIP argues that it is entitled to a tax refund reaching back three years (2012-2015), totaling $152,605.98. The Board argues that an objection was required for each year for which LIP seeks a refund. The Board points to *City of Jackson v. Sly*, 343 So. 2d 473, 476 (Miss. 1977), to argue that an objection is required for each year in which a refund is claimed.

¶43. A summary judgment motion is reviewed de novo. *Kinney*, 202 So. 3d at 192. The Court has stated:

> It is the settled law of this state that, in the absence of a statute providing otherwise, taxes or license fees voluntarily paid without protest cannot be recovered, although assessed and collected without legal authority.

*Morco Indus., Inc.*, 530 So. 2d at 145 (quoting *City of Grenada v. Andrews*, 58 So. 2d 382, 383 (1952)). As stated above, the *Morco Industries* Court held that "Morco was entitled to exemption from all taxes, ad valorem and otherwise, for a period of ten (10) years from the date of completion of the project." *Morco Indus., Inc.*, 530 So. 2d at 144. The *Morco*

21

*Industries* Court then considered whether the taxpayer was entitled to a refund for those years.[10] *Id.* It listed specific types of taxes for which the Legislature had provided a specific refund statute, but the tax at issue in *Morco Industries*, municipal separate school-district taxes, was not included. *Id.* Unlike *Morco Industries*, LIP points to Section 27-73-7 to demonstrate that it is entitled to a refund. Section 27-73-7 states in pertinent part:

> The tax collector is authorized and empowered to refund any individual, firm or corporation any ad valorem, privilege or excise tax which has been paid or collected through error or otherwise when such person, individual, firm or corporation has paid any such tax in excess of the sum properly due whether paid under protest or not. Taxes erroneously paid within the meaning of this section shall include, but not be limited to, double payment, or overpayment, or payment on state, United States, vacant and exempt land, and the purchase paid for the redemption of lands erroneously sold for taxes.

Miss. Code Ann. § 27-73-7 (Rev. 2017).

¶44.    Notably, Section 27-73-7 contains no requirement that an objection be made. Specifically, it provides that the error in payment could have been "under protest or not." Miss. Code Ann. § 27-73-7. In the sections above, the Court has addressed whether the taxes were paid "in error," and the only issue remaining is whether Section 27-73-7 entitles LIP to a refund of the taxes from previous years, before 2015.

¶45.    "If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." *Lawson*, 75 So. 3d at 1027. Section 27-73-7 plainly states that an individual may receive a refund for "any ad valorem . . . tax which has been paid or collected through error . . . whether paid

---

[10]The statute of limitations was not a stated issue in *Morco Industries*, as it is here, and is addressed *infra*.

22

under protest or not." Miss. Code Ann. § 27-73-7. Section 27-73-7 goes on to state plainly that "[t]axes erroneously paid within the meaning of this section shall include . . . payment on . . . exempt land . . . ." Miss. Code Ann. § 27-73-7. Thus, the airport tax exemption under Section 61-3-21 is included under Section 27-73-7.

¶46. The Board argues that *Sly* requires that an objection be made for each year in which a refund is sought. However, the instant case is materially distinguishable from *Sly* for two reasons. First, the *Sly* Court did not consider Section 27-73-7. Second, unlike here, the *Sly* Court concluded that an application was required for the taxpayer to be entitled to the exemption at issue under Section 27-31-101. *Sly*, 343 So. 2d at 475-76. The exemption at issue here, unlike the exemption at issue in *Sly*, is automatic. *See Sly*, 343 So. 2d at 475-76.

¶47. LIP also states that the refund potential of Section 27-73-7 is limited by the statute of limitations enumerated in Section 15-1-49. *See* Miss. Code Ann. § 27-73-7; Miss. Code Ann. § 15-1-49 (Rev. 2012). The Court agrees. Under Sections 27-73-7 and 15-1-49, LIP is entitled to a tax refund for the taxes collected in error for the years 2012 through 2015. The Court reverses the trial court and remands for further proceedings consistent with this opinion on this issue.

**CONCLUSION**

¶48. The Court affirms the trial court in holding that the ad valorem tax exemption sought by LIP was automatic and self-operating under Section 61-3-21, and thereby, properly before the circuit court under Section 11-51-77. Further, the Court affirms the trial court's holding that LIP was entitled to a refund of the 2015 taxes, but under Section 27-73-7, reverses the

23

trial court's holding that LIP is not entitled to a refund for 2012, 2013 and 2014 taxes and remands for further proceedings consistent with this opinion.

¶49.    **ON DIRECT APPEAL:  AFFIRMED.  ON CROSS-APPEAL:  REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL, BEAM AND ISHEE, JJ., CONCUR.**