# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-00935-SCT

*MISSISSIPPI HUB, LLC*

*v.*

*CHARLES BALDWIN, IN THE OFFICIAL CAPACITY OF TAX ASSESSOR OF SIMPSON COUNTY, MISSISSIPPI, AND SIMPSON COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/21/2021 |
| TRIAL JUDGE: | HON. MATTHEW GORDON SULLIVAN |
| TRIAL COURT ATTORNEYS: | JACOB ARTHUR BRADLEY |
| | SHELDON G. ALSTON |
| | LOUIS G. FULLER |
| | NORMAN ELVIN BAILEY, JR. |
| | WILLIAM ROBERT ALLEN |
| | LANCE WESLEY MARTIN |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SHELDON G. ALSTON |
| | NORMAN ELVIN BAILEY, JR. |
| | JACOB ARTHUR BRADLEY |
| ATTORNEYS FOR APPELLEES: | WILLIAM ROBERT ALLEN |
| | LANCE WESLEY MARTIN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 01/19/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., BEAM AND ISHEE, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     This is an appeal from the Simpson County Board of Supervisors' assessment of the value of an underground natural gas storage facility for property-tax purposes. On appeal to the circuit court, Simpson County argued that the appeal by Mississippi Hub, LLC (MS

HUB), was untimely and that its expert had based his opinion on the wrong approach to valuation. The circuit court granted summary judgment. We conclude that there were no grounds upon which summary judgment should have been granted, so we reverse that decision and remand the case for further proceedings.

**FACTS**

¶2. MS HUB operates an underground natural gas storage facility mostly located in Simpson County. In 2007, MS HUB and Simpson County entered into a fee-in-lieu agreement regarding ad valorem taxes on the first phase of the facility. *See* Miss. Code Ann. § 27-31-104 (Rev. 2017). It was agreed that, in exchange for locating the facility in Simpson County, for ten years MS HUB would pay a third of what its taxes would have otherwise been. It was also agreed that the facility was industrial personal property for taxation purposes, that the value of the property would be determined in accordance with Mississippi Code Section 27-35-50 (Supp. 2021), and that economic obsolescence would be considered by the tax assessor at the request of the company.

¶3. In 2017, MS HUB contacted the Simpson County Tax Assessor, Charles Baldwin, regarding market changes in the natural gas storage industry and how those changes had affected the value of the MS HUB facility. While not controlling for the purposes of tax assessment, MS HUB pointed out that the MS HUB facility (including the approximately 18 percent not located in Simpson County) had recently changed ownership and had been sold for approximately $101 million, far less than it cost to build.[1] The assessor ultimately

---

[1] The MS HUB facility was sold as part of a package deal, along with another natural gas storage facility and a pipeline, for a combined $323 million.

2

concluded that a reduction of 20 percent for economic obsolescence should be applied for the 2019 tax year. The Simpson County Board of Supervisors, however, assessed the property at $56,527,560—which would correspond to a true value of $376,850,400, the assessed true value without the adjustment for economic obsolescence.

¶4. MS HUB objected to the assessment at the board's August 5, 2019 equalization meeting. The board dismissed the objections made by MS HUB and denied the objection without giving a written explanation. On December 5, 2019, the chancery clerk mailed a notice to MS HUB that the board's ad valorem tax roll had received approval from the Mississippi Department of Revenue (MDOR). Fifteen days later, MS HUB filed in the circuit court what it styled a "Petition for Declaratory Judgment and, in the alternative, Petition for Appeal from Determination of Ad Valorem Tax Assessment." Simpson County and its tax assessor, Charles Baldwin, were named as defendants.

¶5. On appeal to the circuit court, Simpson County filed a motion for summary judgment, which asserted several grounds—primarily that the appeal was untimely and that MS HUB had failed to offer competent evidence of the true value of the facility. The circuit court ultimately granted summary judgment without stating its reasons for doing so. MS HUB has appealed from that judgment.

**STANDARD OF REVIEW**

¶6. This Court employs a de novo standard of review when considering a lower court's grant of summary judgment. *Short v. Columbus Rubber & Gasket Co.*, 535 So. 2d 61, 63 (Miss. 1988). "The evidence is viewed in the light most favorable to the party opposing the

3

motion. The moving party has the burden of demonstrating no genuine issue of material fact exists." ***Kinney v. S. Miss. Plan. & Dev. Dist., Inc.***, 202 So. 3d 187, 192 (Miss. 2016) (citation omitted). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" ***Id.*** (citation omitted). "Because the movant must be entitled to a judgment as a matter of law, a summary-judgment motion is usually limited to questions of law, which this Court reviews de novo." ***Bennett v. Highland Park Apartments, LLC***, 170 So. 3d 450, 452 (Miss. 2015).

¶7. "[T]his Court's review of the motion for summary judgment is just as if this Court were sitting as the circuit judge. No deference is given to the circuit court's decisions. This Court must look at the same pleadings and evidentiary material that the trial court considered." ***Williams v. City of Batesville***, 313 So. 3d 479, 491 (Miss. 2021) (Griffis, J., concurring in part and in result).

## DISCUSSION

### 1. Timeliness of Appeal

¶8. The principal reason asserted for summary judgment was Simpson County's contention that MS HUB's appeal from the board of supervisors' decision was untimely. This issue concerns two statutes: Mississippi Code Section 11-51-77 (Rev. 2019), which provides for appeals by "[a]ny person aggrieved by a decision of the board of supervisors . . . as to the assessment of taxes," and Mississippi Code Section 27-35-119 (Rev. 2017),

4

which provides for appeals following the board's final assessment after equalizations and recapitulations. According to Simpson County, these are two distinct avenues for appeals, and a party who challenges only the refusal to adjust an assessment of his property may not wait until the final determination of taxes to appeal. Simpson County contends that because MS HUB's arguments do not go to the equalization of the property, it had to take an appeal from the initial denial of its challenge to the assessment.

¶9. We begin by examining the process for tax assessment as laid out in the Missisissippi Code. Generally speaking, after property is classified, the remaining steps are appraisal, equalization, objection, and appeal—but not necessarily in that order. *See* 8 Jeffrey Jackson, Mary Miller & Donald Campbell, *Encyclopedia of Mississippi Law* § 70:14 (2d ed.), Westlaw (database updated Oct. 2022). The statute lays out the process. Section 27-35-81(1) (Rev. 2017) requires the tax assessor to "complete the assessment of both real and personal property and file the roll or rolls with the clerk of the board of supervisors on or before the first Monday in July of each year." Section 27-35-83 (Rev. 2017) then says that, at the July meeting, the board of supervisors shall immediately "equalize" the rolls at least ten days before the August meeting and publish notice that the rolls are ready for public inspection. Section 27-35-89(1) (Rev. 2017) provides that the board "shall hold a meeting . . . on the first Monday of August[] to hear objections to the assessment." "The board shall examine the assessment rolls, and hear and determine all exceptions thereto . . . ." *Id.* The board must then "equalize the assessment and may increase or diminish the valuation of property, so that property of the same value shall be assessed for an equal sum." *Id.* Section

5

27-35-93 (Rev. 2017) elaborates that "[a] person who is dissatisfied with the assessment may, at the August meeting, present objections thereto in writing." "All persons who fail to file objections shall be concluded by the assessment and precluded from questioning its validity after its final approval by the board of supervisors or by operation of law . . . ." *Id.* Section 27-35-105 (Rev. 2017) states that "[a]ssessments must be approved by an order of the board of supervisors entered on the minutes, but the failure to make and enter such order shall not vitiate the assessment if it shall appear that the assessment was made according to law."

¶10. Section 27-35-111 (Rev. 2017) then provides that, "[w]ithin [ten] days of the adjournment of the term at which objections of taxpayers to the roll are heard generally in each year, the board of supervisors shall transmit directly to the state tax commission [two] copies of the recapitulation of their assessment, as equalized on forms to be prescribed by the state tax commission." Section 27-35-113 (Rev. 2017) then requires

> the Department of Revenue to carefully examine the recapitulations of the assessment rolls of the counties, when received, to compare the assessed valuation of the various classes of property in the respective counties, to investigate and determine if the assessed valuation of any classes of property in any one or more counties of the state is not equal and uniform with the assessed values fixed upon the same classes of property in other counties of the state, and to ascertain if any class of property in any one or more counties is assessed contrary to law.

Section 27-35-115 (Rev. 2017) then provides that the MDOR must, within thirty days, "direct what action the county must take in order to comply with the provisions of Section 27-35-113" or "approve the assessment roll" and send notice to the county. Then, under Section 27-35-117 (Rev. 2017), upon receipt of the notice, the president of the board of supervisors "shall immediately call a meeting of the board of supervisors . . . and shall [give notice by

6

publication] that at the meeting the board of supervisors will carry out the instructions of the

department and that any taxpayer aggrieved by the action of the board may present objections

to that action." The board may appeal the decision of the Department of Revenue. *Id.*

¶11.    Section 27-35-119 (Rev. 2017), which is at issue in this case, provides:

> (1) The clerk of the board of supervisors shall mail notice of the adjournment
> of the meeting at which final approval of the roll by the State Tax Commission
> is entered to any taxpayer who objects to an assessment. Such notice shall be
> accompanied by an affidavit from the clerk stating the date upon which such
> notice was mailed.

> (2) Any taxpayer who feels aggrieved at the action of the board of supervisors
> in equalizing his assessments shall have the right of appeal to the circuit court
> in the manner provided by law, within twenty (20) days after the date the
> notice is mailed as provided for in subsection (1) of this section.

Section 27-35-121 (Rev. 2017) goes on to say, in relevant part, that "[i]n case of an appeal

from the judgment of the board of supervisors in the matter of an assessment, the appeal shall

not delay the collection of taxes due by the assessment as approved."

¶12.    Section 11-51-77(1) (Rev. 2019), also at issue in today's case, stands off by itself in

a different title of the code, in a chapter with other appeal statutes. It provides:

> Any person aggrieved by a decision of the board of supervisors or the
> municipal authorities of a city, town or village, as to the assessment of taxes,
> may, within ten (10) days after the adjournment of the meeting at which such
> decision is made, appeal to the circuit court of the county, upon giving bond,
> with sufficient sureties, in double the amount of the matter in dispute, but
> never less than One Hundred Dollars ($100.00), payable to the state, and
> conditioned to perform the judgment of the circuit court, and to be approved
> by the clerk of such board, who, upon the filing of such bond, shall make a true
> copy of any papers on file relating to such controversy, and file such copy
> certified by him, with said bond, in the office of the clerk of the circuit court,
> on or before its next term. The controversy shall be tried anew in the circuit
> court at the first term, and be a preference case, and, if the matter be decided
> against the person who appealed, judgment shall be rendered on the appeal

7

bond for damages at the rate of ten percent (10%) on the amount in controversy and all costs. If the matter be decided in favor of the person who appealed, judgment in his favor shall be certified to the board of supervisors, or the municipal authorities, as the case may be, which shall conform thereto, and shall pay the costs.

¶13. In summary, two code sections provide for appeals from tax assessments, with different deadlines. Section 11-51-77 gives ten days "after the adjournment of the meeting at which such decision [as to the assessment of taxes] is made." Section 27-35-119(2) gives twenty days for appeal after the mailing of notice of the final decision as to tax assessment after equalization and recapitulation, but Simpson County argues that this section only applies to appeals regarding the equalization of the assessment.

¶14. Black's Law Dictionary defines equalization as "1. The raising or lowering of assessed values to achieve conformity with values in surrounding areas. 2. Tax. The adjustment of an assessment or tax to create a rate uniform with another.—Also termed *equalization of taxes*; *fair and proper legal assessment*." *Equalization*, Black's Law Dictionary (11th ed. 2019). The Mississippi Constitution mandates that "[t]axation shall be uniform and equal throughout the State." Miss. Const. art. 4, § 112. There are two aspects to this—equalizing assessments between properties in a county and equalizing assessments between all the counties in the state. The process is laid out in the statutes above, but the Encyclopedia of Mississippi Law summarizes and elaborates:

> Equalization is the process by which appraisals of similar property are compared to ensure equality and uniformity. The board of supervisors of each county is required to begin equalizing assessment rolls at its July meeting in each year and to complete equalization at least 10 days prior to the board's August meeting. The tax assessor is required to attend this meeting, and the board is required to carry out specific duties related to equalization.

8

> Additionally, the Mississippi Department of Revenue has the duty to review and carefully examine recapitulations of the assessment rolls from each county to compare the assessed valuation of the various classes of property in the respective counties, to investigate and determine if the assessed valuation of any class of property in any one county is not equal and uniform with the assessed values of the same class in other counties, and to ascertain if any class of property is assessed contrary to law. The Department is also given the authority to adopt and enforce performance standards for assessments.

8 Jackson, *supra*, at ¶ 9. Simpson County admits in its brief that the MDOR has a "duty to ensure statewide equalization of particular classes of property." Yet Simpson County also argues that MS HUB could not have appealed from an equalization decision because there are no other "similarly situated properties in Simpson County" and thus nothing to equalize it against. But, presumably, the MDOR could have equalized it against other natural gas storage facilities in the state.

¶15. We also observe that Simpson County's argument is based on its reading of the statutes rather than caselaw. MS HUB correctly points out in its brief that there are no published decisions in which a Mississippi court has held that an appeal challenging an assessment was untimely because it was taken under the "equalization" appeals statute. Indeed, our caselaw says the opposite—that there is no final decision of the board of supervisors as to a tax assessment until after the equalization and recapitulation process is (more or less) complete, since that is when the tax assessment becomes set at the final amount.

¶16. This Court has held that an initial tax assessment is not a final decision as to the amount of taxes owed. In ***Ditto v. Hinds County***, 665 So. 2d 878, 882-83 (Miss. 1995) (some alterations in original) (quoting ***Evans v. Board of Supervisors***, 192 Miss. 188, 5 So.

9

2d 224, 226 (1941)), we summarized our prior holdings regarding an appeal of a "tax assessment decision":

> We now deduce from existing statutes and decided cases the rules applicable both to the taxpayer and the sovereign in matters of appeal from tax assessments:
>
> 1. No appeal will lie prior to the action of the supervisors upon the equalization by the State Tax Commission after its examination of the recapitulations provided for in Sections 3175 [§ 27-35-111], 3176 [§ 27-35-113] and 3177 [§ 27-35-115], Code of 1930.
>
> 2. An appeal does lie, within the time required, following that action by the supervisors.
>
> 3. Or such appeal need not be taken following such action but may be taken following the final action of the supervisors upon receipt by them of the certificate from the Tax Commission showing its receipt of and action upon the tax roll, under Section 3183 [§ 27-35-127], Code of 1930.
>
> 4. And if the appeal has been prosecuted following the action of the supervisors upon the equalization by the Commission . . . but the Commission, after receipt of the roll, shall make further changes therein . . . the aggrieved party may prosecute a further appeal following the meeting of the supervisors finally approving such changes.

The *Ditto* Court, quoting from *Evans*, explained the reason for this holding—the statutory back-and-forth between the tax commission and the board of supervisors made it hard to know when a final decision had been reached:

> It is a wise and just policy which seeks to have cases decided upon their merits, within prescribed rules of law. Neither the taxpayer nor the sovereign should be put to the gamble of seizing at just the right moment the [shuttle] as it moves back and forth between the supervisors and the Commission in an effort to weave the tax fabric of the State.

*Id.* at 883 (quoting *Evans*, 5 So. 2d at 226). *Evans* was itself based on prior decisions, one of which is particularly important today:

10

The effect of the holding in the cases of ***Mobile & O. R. Co. v. Board of Supervisors of Wayne County***, 124 Miss. 655, 87 So. 139; and ***Moller-Vandenboom Lumber Co. v. Board of Supervisors of Attala County***, 135 Miss. 249, 99 So. 823; ***Wilkinson County v. Foster Creek Lumber & Mfg. Co.***, 135 Miss. 616, 100 So. 2; and ***Marathon Lbr. Co. v. State et al.***, 139 Miss. 125, 103 So. 798, is that such appeals by individuals may be taken following the action of the supervisors approving the assessment on instructions from the State Tax Commission after its equalization based on an examination of the recapitulations pursuant to Sections 3175 [§ 27-35-111] and 3176 [§ 27-35-113], Code of 1930, which, in the case at bar, was the October meeting of the supervisors.

***Evans***, 5 So. 2d at 226.

¶17.    ***Moller-Vandenboom***, a 1924 case, comes closest to directly addressing the arguments presented today, even if its holding has been abrogated somewhat by the more lenient rule articulated in ***Ditto*** and ***Evans***.  In the Court's syllabus, which was subsequently recited as the holding of the case in another decision of this Court,[2] this Court said:

We hold that only the final order of the board of supervisors can be appealed from, and that the grant of the right of appeal and the manner in which it is to be prosecuted are regulated and controlled by section 81, Code of 1906 (Hemingway's Code, § 61) [the analogue to current § 11-51-77], and section 10 of chapter 323, Laws of 1920 (section 7769h1, Hemingway's Supplement 1921) [§ 27-35-119], construed together.  From the Tax Commission Act it is apparent that no final adverse decision to the taxpayer can be made by the board until its meeting at which the instructions of the State Tax Commission for horizontal increases or decreases are entered by the board of supervisors. And, furthermore, if the state tax commission order no horizontal increases or decreases of property, still any action of the board of supervisors taken theretofore with reference to equalization of assessments is not final.

***Moller-Vandenboom Lumber Co. v. Bd. of Supervisors of Attala Cnty.***, 135 Miss. 249, 99 So. 823, 825 (1924).

---

[2] ***Wilkinson Cnty. v. Foster Creek Lumber & Mfg. Co.***, 135 Miss. 616, 100 So. 2, 3 (1924).

¶18. Simpson County goes to great lengths in an attempt to distinguish *Moller-Vandenboom* from today's case. Simpson County contends that the taxpayer in *Moller-Vandenboom* was really appealing the *equalization* of its assessment rather than the assessment itself. It points to numerous times that this Court referred to equalization in the opinion—*Moller-Vandenboom* summarized the appellee's argument as: "there is no right of appeal from an order of the board of supervisors equalizing the assessments until after action thereon by the State Tax Commission." *Moller-Vandenboom*, 99 So. at 823.

¶19. Simpson County's argument is unpersuasive. The dispute in *Moller-Vandenboom* was over the assessed value of the property, and the Court did not delve into the details of the taxpayer's arguments to determine whether they were "really" challenging the equalization of their assessments. In our judgment, *Moller-Vandenboom* used *equalization* and *assessment* somewhat interchangeably because equalization is a part of the assessment process. Indeed, the statutes can, for the most part, be read harmoniously if it is understood to regard taxpayers' objections as a part of the equalization process and for equalization to be inherent in assessment and assessment inherent in equalization. The statute requires that the board of supervisors equalize the assessments at the July meeting, before objections can be heard. *See* Miss Code Ann. § 27-35-83. At the July equalization meeting, the board "shall then and there cause to be assessed any person or thing that may be found to be omitted, and anything found to be undervalued may be correctly valued." Miss Code Ann. § 27-35-87 (Rev. 2017). Taxpayers must object to their assessments at the August meeting—but at that same meeting, the board of supervisors is to equalize assessments again.

Miss Code Ann. § 27-35-89. Section 27-35-89(1) says that the board "shall hold a meeting . . . on the first Monday of August[] to hear objections to the assessment." "The board shall examine the assessment rolls, and hear and determine all exceptions thereto . . . ." *Id.* The board must "equalize the assessment" and "may increase or diminish the valuation of property, so that property of the same value shall be assessed for an equal sum." *Id.* Section 27-35-93 states that "All persons who fail to file objections [at the August meeting] shall be concluded by the assessment and precluded from questioning its validity after its final approval by the board of supervisors or by operation of law . . . ." That is why *Moller-Vandenboom* referred to the August meeting of the board of supervisors, when objections are heard and disposed of, as the "August equalization meeting." *Moller-Vandenboom*, 99 So. at 824.

¶20.     We observe also that this "Court looks to the whole of a statute to avoid adhering to one sentence or phrase of statute of statute in a way that skews its true meaning." ***Bd. of Supervisors of Jackson Cnty. v. Qualite Sports Lighting, LLC***, 337 So. 3d 1040, 1046 (Miss. 2022) (quoting ***Lawson v. Honeywell Int'l, Inc.***, 75 So. 3d 1024, 1029 (Miss. Ct. App. 2011)). Thus, while Section 27-35-119(2)'s granting of the right of appeal to "any taxpayer who feels aggrieved at the action of the board of supervisors in equalizing his assessments" might be read as limiting the appeals to situations in which the board has adjusted an assessment for the purposes of equalization, that reading is not consistent with subsection (1) of the same section (requiring notice to "any taxpayer who objects to an assessment" after final approval of the tax roll is entered) nor is it consistent with Section 27-

13

35-93 (referring to "questioning [the assessment's] validity after its final approval"—presumably, appeal). Simpson County's reading is likewise not consistent with the process laid out by title 27, chapter 35, as a whole; simply put, it makes more sense for the statute to permit appeals from assessments after the assessment has been finalized. "Certainly great confusion would result if two appeals were intended to be given the taxpayer, one from the interlocutory order entered at the August equalization meeting of the board and the other after the receipt of instructions from the State Tax Commission." *Moller-Vandenboom*, 99 So. at 824. The Court unambiguously said that

> It is true that the taxpayer who is dissatisfied with his *assessment* under section 7 of chapter 323, Laws of 1920 (section 7769e1, Hemingway's Supplement 1921) [analogue to current § 27-35-93], is required at the said August equalization meeting to present his objections in writing to such *assessment*, which shall be filed with the clerk and docketed and preserved with the roll, and that all persons who fall to so file objections shall be precluded from questioning the validity of its final approval by the board or by operation of law. But there is no requirement that the taxpayer appeal from such *assessment* within five days of the adjournment of that meeting. The purpose of this provision was to bring to the attention of the board of supervisors at the earliest opportunity objections to the *assessments* made by the taxpayers.

*Id.* at 824-25 (emphasis added).

¶21. We have also held that Sections 27-35-119 and 11-51-77 must be read together. "[I]n order to appeal a tax-assessment equalization under Section 27-35-119 . . . the appellant must comply with Section 11-51-77—in other words, post a bond . . . ." *Natchez Hosp. Co. v. Adams Cnty. Bd. of Supervisors,* 238 So. 3d 1162, 1165 (Miss. 2018). In *Natchez Hospital*, the taxpayer made the same argument Simpson County does in the present case—"that Section 11-51-77 and [Sections 27-35-119 & -121] provide distinct, independent paths for

appeal." *Id.* at 1164. This Court rejected the argument, observing that "[a] historical review of these statutes and this Court's application of those statutes requires a different outcome." *Id.* Thus, although the time for appeal was set by Section 27-35-119, the bond requirements of Section 11-51-77 applied. *See id.*

¶22. As to why there are two statutes with two separate deadlines for appeal, MS HUB suggests several scenarios in which assessments may be made without going through the statutory process laid out above. Under those circumstances, the only way to appeal would be through Section 11-51-77. We do not find it necessary to explore those hypotheticals, however, as this Court's prior decisions have been clear: we have never delved into a taxpayer's arguments to distinguish between an appeal from an assessment and an appeal from an equalization. We see no reason to deviate from that precedent today.

### 2. Declaratory Judgment

¶23. It is argued in the alternative that the circuit court had jurisdiction to enter a declaratory judgment against Simpson County based on a contract theory derived from the fee-in-lieu agreement. Given that the circuit court had jurisdiction as a tax assessment appeal, we find it unnecessary to address this issue.

### 3. Trial De Novo

¶24. Another issue presented by the summary judgment motion was whether or to what extent the circuit court could try the issue anew. Simpson County argues that no additional evidence may be presented or considered on appeal to the circuit court.

15

¶25.    We find no merit to this contention.  While the appeal was taken pursuant to Section 27-35-119, which does not say one way or the other the nature of the appeal, Section 27-35-119(2) provides that the appeal shall be taken "in the manner provided by law."  As noted above, this Court has held that Section 27-35-119 must be construed together with Section 11-51-77.  *See Natchez Hospital*, 238 So. 3d at 1165.  Section 11-51-77 states that the issue of the assessment is to be "tried anew."  We see no reason why the statutes should not be construed together in deciding that Section 27-35-119's "manner provided by law" is in reference to Section 11-51-77's "tried anew."

¶26.    Indeed, this Court addressed a similar issue in *Lenoir v. Madison County*, 641 So. 2d 1124, 1132 (Miss. 1994), and held that "*where a tax matter is involved*, the filing of a bill of exceptions is not [required]."  This is because the specific statute, Section 11-51-77, controlled over the general statute, Section 11-51-75 (Rev. 2019), which provides for appeals limited to the record before the board of supervisors.  *Lenoir*, 641 So. 2d at 1132.  "In a trial de novo, 'the proceedings of the board of supervisors are not in issue, only the decision of the board of supervisors is reviewed.'"  *NRG Wholesale Generation LP v. Kerr*, 258 So. 3d 278, 283 (Miss. 2018) (quoting *Lenoir*, 641 So. 2d at 1128).

¶27.    Simpson County suggests that "tried anew" should have some different meaning than that would be commonly expected.  It relies on *Whittle v. City of Hattiesburg*, 132 Miss. 808, 96 So. 741, 741 (1923), which it contends limits MS HUB to the evidence it had presented to the board of supervisors.  That is simply not what *Whittle* held: "To try a cause anew means to try it as if it never had been tried before."  *Id.*  "[T]he judgment appealed

from is wiped out and the cause stands in the circuit court for trial exactly like it did before the equalization board when that board sought to raise the assessment of appellant's property as returned by the assessor." *Id.* *Whittle* cannot be construed as limiting the trial in the circuit court to the evidence that was actually presented to the board.

¶28.   Simpson County also relies on *California Co. v. State Oil & Gas Board*, 200 Miss. 824, 27 So. 2d 542, 546 (1946), which held that a conventional trial de novo could not be authorized in an appeal from "a legislative or administrative decision of the State Oil and Gas Board" due to separation of powers issues.  Obviously, no "legislative or administrative" functions are at issue in this case, and *California Co.* is inapposite.  But we do note that *California Co.* acknowledges that a trial de novo, if constitutional in that case, would have "allow[ed] an appellant to present to the Circuit Court a different state of case or one based on additional facts." *Id.* at 546.  This proposition is inherent in the statute's use of the words "tried anew." *See* Miss. Code Ann. § 11-51-77.

¶29.   We find no merit to Simpson County's argument that MS HUB must be limited to the evidence it presented to the board of supervisors when it objected to the assessment.

####    4.     MDOR Mandated Approach; Admissibility of Expert

¶30.   Simpson County's final argument for affirming the summary judgment is that MS HUB failed to present any competent evidence as to valuation due to its experts' failure to offer an opinion based on "original acquisition cost, new," which Simpson County proffers is only competent way to evaluate the value of all industrial property.

17

¶31. The Mississippi Department of Revenue is granted by the Legislature "the power to adopt, amend or repeal" tax regulations. Miss. Code Ann. § 27-35-50(6) (Rev. 2017). Simpson County points to the Mississippi Administrative Code, which states:

> Original acquisition cost new, including all cost associated with installing the equipment in place for production, will be the base for all industrial property. The industry will be classed by utilizing Marshall Valuation Service's manual showing the average life category for the industry. The base cost will be multiplied by the appropriate inflation factor furnished by the [MDOR] (from Marshall Valuation Service) based on the age of the item. This calculation will be multiplied by the appropriate percent good depreciation factor (again based on age) that is provided annually by the [MDOR].

35 Miss. Admin. Code Part VI.02.08.104(1) (adopted Nov. 17, 2011), Westlaw.

¶32. The MDOR is also granted the authority to maintain the Mississippi Appraisal Manual, which according to its preface "represents the [MDOR's] guidelines for the valuation of real and personal property" and "serve[s] as a comprehensive guide for the property tax assessors and appraisers." The manual explains that "[r]eplacement cost new less depreciation is the preferred method for determining personal property costs in industries."

¶33. Noteworthy is the recent *NRG Wholesale Generation LP v. Kerr*, 258 So. 3d 278, 283 (Miss. 2018), in which this Court held that "[b]ecause Section 27-35-50 gives the [MDOR] the exclusive authority to determine the method to be used to calculate true value, the [MDOR's] regulation is mandatory and binding" in a trial de novo. The *NRG* Court summarized the regulations as "mandat[ing] the use of the trended historical cost-less-depreciation approach to calculate the true value of property classified as industrial

18

personal property." ***Id.*** Thus, an expert who did not use the cost approach as mandated by the MDOR was properly excluded. ***Id.***

¶34. As noted above, the circuit court granted summary judgment in today's case without elaborating, despite the numerous independent grounds asserted for summary judgment. The circuit court also had before it several motions in limine, including a motion to strike MS HUB's experts; but those motions were never ruled on. Ordinarily, the issue of the admissibility of an expert's testimony would be a question better left for the circuit court—the admissibility of expert testimony is usually subject to review only for an abuse of discretion. ***Patterson v. Tibbs***, 60 So. 3d 742, 748 (Miss. 2011). But in this case, whether there has been a "departure from the proper legal standard for determination of value . . . is a question of law" and is reviewed de novo. ***NRG***, 258 So. 3d at 281. Thus, this Court can consider whether MS HUB's experts should have been excluded due to their failure to follow the statutory/regulatory guidelines.

¶35. That being said, we decline to review every objection to each piece of evidence that MS HUB might try to introduce at trial; we will only address the question of whether MS HUB offered admissible evidence sufficient to defeat summary judgment. As we find that it did, we reverse the summary judgment and remand the case for the circuit court to address the other evidentiary issues in due course.

¶36. Most of the argument centers around MS HUB's proffered expert, Kevin S. Reilly. According to Simpson County, Reilly misapplied the cost approach or relied too heavily on economic obsolescence in his cost-approach assessment. Reilly found economic

19

obsolescence that amounted to 75 percent of the reproduction cost new less physical deterioration—a reduction in his proffered assessment of $319,400,000, down to $124,166,818. This was, as Simpson County points out, close to the approximately $100 million price of the facility in a recent sale.

¶37. Simpson County admits that economic obsolescence can be considered under the mandated approach; the MDOR states that both functional obsolescence and economic obsolescence can be considered in applying the cost approach to personal property:

> 1. Functional Obsolescence: The Assessor may optionally grant an allowance for functional obsolescence. If the Assessor chooses to grant such an allowance in addition to that already contained within the normal depreciation tables, it must remain within the allowance contemplated in the functional obsolescence tables annually furnished by the [MDOR]. Only in the most extreme circumstances would an allowance beyond that contemplated in the tables of allowance be allowed. Allowance for functional obsolescence beyond the amount provided in the tables must be elaborately justified by the taxpayer and scrutinized by the Assessor and [MDOR].

> 2. Economic Obsolescence: Economic obsolescence must be proved on a case-by-case basis to the Tax Assessor.

35 Miss. Admin. Code Pt. VI, R. 2.08.106 (adopted Nov. 17, 2011), Westlaw. And in at least three decisions, this Court has, in passing, acknowledged economic obsolescence as a consideration in the relevant cost approach to assessment. *See NRG*, 258 So. 3d at 280 n.2; *Rebelwood, Ltd. v. Hinds Cnty.*, 544 So. 2d 1356, 1360 n.5 (Miss. 1989); *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 945 n.2 (Miss. 2008) (citing *Rebelwood*, 544 So. 2d at 1360 n.5).

¶38. Simpson County acknowledges that economic obsolescence is a relevant factor in the cost approach, but it takes issue with how it has been applied by MS HUB's expert. First,

Simpson County contends that the economic obsolescence must be incurable or the product of long-term rather than short-term variability; it argues that the natural gas market, which affects the value of the natural gas storage facility at issue here, is too volatile to support a finding of economic obsolescence amounting to 75 percent of the original value. But we observe that MS HUB also proffered the opinion of another expert, Andrew Franks, who opined that the economic obsolescence of the facility was the product of "fundamental changes" in the industry (specifically, there being less of a market for gas storage due to new sources being developed) and "overall deterioration" of the natural-gas market since the "late 2000s" when construction of the MS HUB facility began. Reilly himself stated he computed economic obsolescence by applying an Earnings Before Interest Depreciation and Amortization (EBITDA) shortfall analysis which incorporated long-term trends.

¶39.    Simpson County also contends that Reilly improperly considered income such that his "concept of economic obsolescence is nothing more than an attempt to convert the [cost] approach into an income capitalization approach." *In re Tenneco, Inc.-Tenn. Gas Pipeline Div. v. Town of Cazenovia*, 104 A.D.2d 511, 514 (N.Y. App. Div. 1984). In support of this argument, Simpson County cites a published article written by Reilly himself that stated (in part) that "An often-used catch-all technique for quantifying [economic obsolescence] is the income/earnings shortfall method." Simpson County contends that Reilly's published method of calculating economic obsolescence "per se conflicts with MDOR's governing regulations" because it functionally replaces the cost approach with the income approach (these being two of the three major ways to assess property with the former being mandated

by the MDOR).  But  Simpson County cites nothing from the MDOR other than what we have quoted above, and so far as we are aware, neither the Mississippi Code nor the MDOR's regulations specify exactly how economic obsolescence must be computed.  As MS HUB points out in its brief, "Than 'an' income analysis may be performed to measure economic obsolescence does not mean that Reilly used 'the' income approach to value [as opposed to the cost approach]."

¶40.    The MDOR regulations specifically allow for the consideration of economic obsolescence in the cost approach for personal property, and Simpson County has failed to show that Reilly did not comply with the mandated approach.  Simpson County thus failed to make a prima facie showing that summary judgment should be granted on this point.

## CONCLUSION

¶41.    MS HUB's appeal was timely, and there is a genuine issue of material fact on the question of the true value of the facility.  Thus, we reverse the circuit court's grant of summary judgment and remand the case for further proceedings.

¶42.    **REVERSED AND REMANDED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**